FILED
2019 Aug-14 AM 11:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ROBERT CARLOS TAYLOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner, Social Security )<br>Administration )<br>)<br>Defendant. ) | CASE NO. 4:18-cv-79-GMB |

## MEMORANDUM OPINION AND ORDER

On September 15, 2014, Plaintiff Robert Carlos Taylor applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of January 26, 2012. Taylor's application for benefits was denied at the initial administrative level. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on August 9, 2016. He denied Taylor's claims on November 29, 2016. Taylor requested a review of the ALJ's decision by the Appeals Council, which declined review on November 24, 2017. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of November 24, 2017.

Taylor's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal

Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Based on a careful review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Taylor bears the burden of proving that he is disabled, and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform her former occupation?
> (5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R.

§ 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND

Robert Taylor was 59 years old at the time of the ALJ's decision. R. 49. Taylor lives alone in a rental home in Gadsden, Alabama. R. 49–50. His primary complaints are seizures and high blood pressure. R. 158. He suffers from cirrhosis, tachycardia, premature ventricular contractions due to severe left ventricular dysfunction, diabetes, hypertension, seizure disorder, hearing loss, severe low back pain, and bilateral knee pain. Doc. 9 at 1.

Taylor has a twelfth-grade education. R. 159. From 1984 to 2012, he worked as semi-skilled laborer for a water and sewer board. R. 159. Taylor has not engaged in substantial gainful activity since January 26, 2012. R. 30.

The ALJ held a hearing in Taylor's case on August 9, 2016. R. 42. At the hearing, the ALJ posed the following hypothetical to a vocational expert ("VE"):

> Please assume a hypothetical individual who is capable of performing medium exertional level work. This hypothetical individual has several restrictions, including: should never climb ladders or scaffolds; should work in close proximity to coworkers or supervisors in order to be under observation to monitor potential unplanned seizure activity; this individual should never be exposed to unprotected heights, dangerous tools, dangerous machinery, or hazardous processes; should never operate commercial motor vehicles; and any time off task by our

5

> hypothetical individual would be accommodated by normal workday breaks.

R. 66. The VE determined that this hypothetical individual could not work as a sewer line repairer, but could work as a hand packager, a washer, and an order filler. R. 65–67. The ALJ then asked whether that same individual could perform the past relevant work of sewer line repairer if he was limited to performing light exertional level work. R. 67. The VE concluded that the hypothetical individual, if limited to light exertional work, could not perform his past relevant work. R. 67. The ALJ did not inquire whether this individual limited to light exertional work could perform any jobs in the national economy. R. 67.

The ALJ issued his decision on November 29, 2016. R. 37. He found that Taylor suffers from the following severe impairments under 20 C.F.R. § 404.1520(c): seizure disorder, bilateral hearing loss, hepatic cirrhosis without focal lesion, history of ischemia with global hypokinesis, essential hypertension, hyperlipidemia, diabetes mellitus, and tinnitus. R. 30. The ALJ found that the "medically determinable combination of impairments constitutes more than a slight abnormality, and could reasonably be expected to have caused more than a minimal effect on the claimant's ability to perform basic work related activities for a continuous period of 12 months or more." R. 30. But the ALJ concluded at step three of the analysis that none of Taylor's impairments, nor a combination of his impairments, satisfy or medically equal the severity of one of those listed in the

6

applicable regulations. R. 30. At steps four and five, the ALJ found that Taylor has the residual functional capacity ("RFC") to perform a limited range of medium exertional work. R. 32. The ALJ concluded that Taylor should never climb ladders or scaffolds; should work in close proximity to co-workers or supervisors; should never be exposed to unprotected heights, dangerous machinery, dangerous tools, or hazardous processes; and should not operate commercial motor vehicles. R. 32.[1]

Ultimately, the ALJ determined that Taylor is unable to perform any past relevant work. R. 35. But considering Taylor's age, education, work experience, and RFC, he found that there are jobs that Taylor can perform that exist in significant numbers in the national economy. R. 36. Therefore, the ALJ concluded that Taylor is not disabled within the meaning of the Social Security Act. R. 37. Based on these findings, the ALJ denied Taylor's claims. R. 19.

## IV. DISCUSSION

Taylor presents two issues on appeal: (1) whether the ALJ incorrectly failed to apply Grid Rules 201.06 and 202.06, and (2) whether the ALJ's decision was based on substantial evidence because the hypothetical posed to the VE was incomplete. Doc. 9 at 1.

The court concludes that substantial evidence supports the ALJ's RFC

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

7

finding. Before determining whether a claimant can perform any past relevant work or any other jobs in the national economy, the ALJ must determine the claimant's RFC. *Carroll v. Soc. Sec. Admin, Comm'r.*, 435 F. App'x 889, 894 (11th Cir. 2011). Taylor alleges that he has the RFC to perform only light work (*see* Doc. 9 at 10), but the ALJ found that Taylor has the RFC to perform a limited range of medium work. R. 32. The ALJ's RFC finding is supported by substantial evidence.

The ALJ is responsible for determining a claimant's RFC. *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). To determine a claimant's RFC, the ALJ must follow a two-step process. First, he must determine whether there is a physical or mental impairment that could produce the claimant's symptoms. R. 23. Then, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's functional capacity. R. 23.

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). There is no requirement that the RFC assessment "be supported by the assessment of an examining or treating physician." *Id.* at 1055–56. And the ALJ need not "specifically refer to every piece of evidence, so long as the ALJ's decision

is not a broad rejection . . . where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013). The "ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016). However, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r, Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Substantial evidence supports the ALJ's RFC determination here. For example, as the ALJ highlighted, Taylor did not allege in his function report that he had problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, climbing stairs, using his hands, or getting along with others. R. 168–75. While Taylor reported that he could not do yard work, he stated that he could accomplish household chores like laundry and washing the dishes. R. 169–70. Moreover, at the hearing before the ALJ, Taylor testified that he occasionally used his hand mower to cut the grass at his house. R. 62–63. Taylor does his own grocery shopping and travels to the store to get his own medication. R. 170. He reported no change in his hobbies, interests, or social activities since his alleged disabilities

9

began. R. 171–172.

In addition to Taylor's function report, his medical records support the RFC finding. Taylor's visits to a facility known as Quality of Life from 2011 through 2014 were essentially normal. R. 196–214. He reported having no seizures since 2009. R. 196, 200, 203 & 207. For the most part, both his hypertension and seizure disorder were under control when properly medicated. R. 196–214. Although Taylor did have hypertension problems at one point, these symptoms were resolved after he resumed his medication. R. 196. And even when Taylor was noncompliant with his seizure medication, he did not suffer any seizure episodes. R. 207. He stated to the doctor that he stopped taking medication because he ran out and "just didn't think about coming back for it." R. 207. In 2014, Taylor's only complaint was of a cyst in his armpit, which was healed one week later. R. 207 & 211. His physical exams; exams of his head, ear, nose, and throat; and exams of his respiratory, cardiovascular, gastrointestinal, and genitourinary systems routinely were normal. R. 196–214. Moreover, as the ALJ highlighted in his decision, Taylor did not receive any medical treatment in 2012 or 2013 at Quality of Life for his medically determinable severe impairments. R. 34. Taylor's treatment records at Quality of Life from 2015 to 2016 are similarly unremarkable. R. 351–84. Taylor was noncompliant at times with his medication and follow-up visits, but he suffered no seizures as a result, and any other complications were resolved by resuming his medication regimen. R. 376.

Likewise, when Taylor was treated at a Department of Veterans Affairs ("VA") medical facility, no serious issues were noted. He was given eyeglasses. R. 250. After complaining of hearing problems, he was given hearing aids. R. 271. The VA found that though he had 10% tinnitus, his hearing loss did not amount to a finding of disability, and that he suffered no impaired hearing. R. 252, 269 & 271. His physical examinations at the VA were mostly normal, but in April 2016 an EKG revealed an abnormality. R. 297. After a stress test in June 2016, VA doctors found Taylor's heart to be functioning normally. R. 230.

Perhaps most telling is Taylor's testimony at the hearing before the ALJ. He told the ALJ that he applied for a housekeeping job at a hospital. R. 59. Taylor testified that he could possibly perform this job (R. 61), but that he thought he was not hired because he revealed that he suffers from a seizure disorder. R. 59. Taylor told the ALJ that he could do just about anything if he put his mind to it when the ALJ asked his physical limitations. R. 62. Even when Taylor's own attorney asked him what kept him from working a full-time job, Taylor responded, "State retirement said that I couldn't make over 40 hours a week." R. 63. When asked whether he thought he could physically work a full-time job, Taylor replied, "I believe so." R. 63–64.

On this record, Taylor has not produced evidence demonstrating that he is limited to performing work at the light exertional level. The ALJ's RFC finding that

Taylor can perform medium level work with some limitations is supported by substantial evidence.

## A. Grid Rules 201.06 and 202.06

"At the fifth step of the ALJ's sequential analysis, the burden shifts to the Commissioner to show that significant numbers of jobs exist in the national economy that the claimant could perform." *Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 845 (11th Cir. 2012). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *McKinzie v. Comm'r of Soc. Sec.*, 362 F. App'x 71, 73–74 (11th Cir. 2010) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). The ALJ can rely on the Medical Vocational Guidelines (the "Grids") or the testimony of vocational expert when making this determination. *Id.* ("An ALJ may determine whether claimant has the ability to adjust to other work in the national economy by applying the Grids or by obtaining the testimony of a vocational expert."). But exclusive reliance on the Grids is inappropriate where the claimant is unable to perform a full range of work at a given residual functional level or where the claimant suffers from non-exertional impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). Exertional impairments are those that place limits on individual's ability to meet job strength requirements. *See Foote v. Charter*, 67 F.3d 1553, 1559 (11th Cir. 1995).

Here, Taylor argues that the ALJ erred by failing to apply Grid Rules 201.06 and 202.06. Doc. 9 at 1. Grid 201.06 directs that a claimant is disabled if she is of advanced age; has a high school education or more, but that education does not provide for direct entry into skilled work; and has previous work experience skills that are not transferrable. Grid Rule 202.06 provides the same, but Grid Rule 201.06 applies only to those with an RFC limiting them to sedentary work as a result of a severe medically determinable impairment, while Grid Rule 202.06 applies to those with an RFC that limits them to light work due to a severe medically determinable impairment. Thus, neither of these Grids apply to Taylor since he has the residual functional capacity to perform a limited range of medium work. R. 32. Accordingly, the ALJ did not err by not applying Grid Rules 201.06 and 202.06 to Taylor's case.

## B. Hypothetical Posed to the Vocational Expert

Taylor argues that the ALJ's ultimate determination of disability is not supported by substantial evidence because the ALJ posed an incomplete hypothetical to the VE. Doc. 11 at 3. Taylor asserts that the ALJ's hypothetical failed to include all of the limitations and impairments caused by Taylor's seizure disorder, bilateral hearing loss, hepatic cirrhosis, ischemia, hypertension, hyperlipidemia, diabetes mellitus, and tinnitus. Doc. 9 at 11. In other words, Taylor argues that the ALJ did not accurately state his pain level or RFC to the VE. Doc. 11 at 4.

The relevant inquiry here again "concerns the fifth step of the sequential

evaluation process—whether the Commissioner carried his burden of demonstrating that a significant number of jobs exist in the national economy that [the claimant] can perform." *McKinzie v. Comm'r of Soc. Sec.*, 362 F. App'x 71, 73–74 (11th Cir. 2010). To do this, an ALJ often relies on the testimony of a vocational expert. *See Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 298 (11th Cir. 2011); *Yates v. Comm'r of Soc. Sec.*, 706 F. App'x 588, 593 (11th Cir. 2017) ("Obtaining testimony from a vocational expert is the preferred means for introducing evidence that there are jobs in the economy that the claimant can perform."). When the ALJ uses a VE, the ALJ will pose hypothetical questions to establish whether someone with the claimant's limitations will be able to secure employment in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* at 298. But the hypothetical "need only include the claimant's impairments, not each and every symptom of the claimant." *Yates*, 706 F. App'x at 593. And "the ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported." *Id*.

Here, the hypothetical posed to the VE incorporated the RFC finding supported by substantial evidence. *See Carroll v. Soc. Sec. Admin., Comm'r.*, 452 F. App'x 889, 894–895 (11th Cir. 2011) ("To begin, the VE was asked hypothetical

14

questions that incorporated the mental and emotional RFC determinations that were supported by record evidence. The ALJ properly excluded from the hypothetical questions . . . symptoms that exceeded the RFC determination."). Because the ALJ found that any limitations restricting Taylor to light or sedentary work were unsupported, he was not required to include those limitations in his hypothetical. *See Yates*, 706 F. App'x at 593 ("[T]he ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported."). Instead, the ALJ properly posed a hypothetical regarding an individual with the RFC to perform a limited range of medium exertional level work. Because the ALJ included the limitations he found to be supported by the record, he posed a complete hypothetical to the VE. Ultimately, the "evidence as a whole, including that elicited from the VE, supports the ALJ's finding that [Taylor] could perform a range of medium work that was present in the economy in significant numbers." *Carroll*, 453 F. App'x at 895.

To conclude, the ALJ decided that Taylor had the RFC to perform a limited range of medium work. R. 32. That RFC determination was supported by substantial evidence. Accordingly, the ALJ properly rejected Grids 201.06 and 202.06, and properly relied on VE testimony concerning individuals capable of performing a limited range of medium work. The ALJ's decision is supported by substantial evidence, and Taylor's claims are without merit.

## V. CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. A final judgment will be entered separately.

DONE and ORDERED on August 14, 2019.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE